UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**LANE ROBERT PINCHARD,**

        **Plaintiff,**

        v.                                          Case No. 19-CV-1411

**ANDREW M. SAUL,**
**Commissioner of the Social Security Administration,**

        **Defendant.**

---

## DECISION AND ORDER

---

**1. Introduction**

Plaintiff Lane Pinchard alleges he has been disabled since November 1, 2011 (Tr. 13) and therefore seeks a period of disability and disability insurance benefits. After his application was denied initially (Tr. 68-80) and upon reconsideration (Tr. 82-98), a hearing was held before an administrative law judge (ALJ) on July 20, 2017 (Tr. 34-66). On October 2, 2017, the ALJ issued a written decision concluding that Pinchard was not disabled. (Tr. 13-26.) After the Appeals Council denied Pinchard's request for review on September 24, 2019 (Tr. 1-4), he filed this action. All parties have consented to the full jurisdiction of a magistrate judge (ECF Nos. 4, 6), and this matter is ready for resolution.

## 2. ALJ's Decision

In determining whether a person is disabled an ALJ applies a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). At step one, the ALJ determines whether the claimant has engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). The ALJ found that Pinchard "did not engage in substantial gainful activity during the period from his alleged onset date of November 1, 2011 through his date last insured of December 31, 2016[.]" (Tr. 15.)

The analysis then proceeds to the second step, which is a consideration of whether the claimant has a medically determinable impairment or combination of impairments that is "severe." 20 C.F.R. §§ 404.1520(a)(4)(ii), (c). An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1522(a). The ALJ concluded that Pinchard has the following severe impairments: "degenerative disc disease, bilateral hip osteoarthritis, and obesity[.]" (Tr. 16.)

At step three the ALJ is to determine whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (called "the listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If the impairment or impairments meets or medically equals the criteria of a listing and also meets the twelve-month durational requirement, 20 C.F.R. § 404.1509, the claimant is disabled. 20 C.F.R. § 404.1520(d). If the

2

Case 2:19-cv-01411-WED   Filed 08/11/20   Page 2 of 12   Document 24

claimant's impairment or impairments is not of a severity to meet or medically equal the criteria set forth in a listing, the analysis proceeds to the next step. 20 C.F.R. § 404.1520(e). The ALJ found that "[t]hrough the date last insured, [Pinchard] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" (Tr. 17-18.)

In between steps three and four the ALJ must determine the claimant's residual functional capacity (RFC), which is the most the claimant can do despite his impairments. 20 C.F.R. § 404.1545(a)(1). In making the RFC finding, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. 20 C.F.R. § 404.1545(a)(2). In other words, "[t]he RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. The ALJ concluded that through the date last insured Pinchard has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: occasional climbing of ladders, ropes, and scaffolds; occasional climbing of ramps and stairs; and occasional stooping, kneeling, crouching, crawling, and balancing.

(Tr. 18.)

After determining the claimant's RFC, the ALJ at step four must determine whether the claimant has the RFC to perform the requirements of his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560. Pinchard's past work was as a service manager and automotive technician. (Tr. 23.) The ALJ concluded that "[t]hrough the date last

3

insured, [Pinchard] was capable of performing past relevant work as a service manager. This work did not require the performance of work-related activities precluded by [Pinchard's] residual functional capacity[.]" (*Id.*)

Even though the ALJ found Pinchard was not disabled at step four, he made alternate findings and continued to step five. (Tr. 24.) The last step of the sequential evaluation process requires the ALJ to determine whether the claimant is able to do any other work, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). At this step, the ALJ concluded that "[i]n the alternative, considering [Pinchard's] age, education, work experience, and residual functional capacity, [Pinchard] had also acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy." (Tr. 24.) In reaching that conclusion, the ALJ relied on testimony from a vocational expert (VE), who testified that a hypothetical individual of Pinchard's RFC, age, education, and work experience could perform the requirements of officer helper, cashier II, sales attendant, order clerk, receptionist, and civil service clerk. (Tr. 25.) After finding Pinchard could perform work in the national economy, the ALJ concluded that he was not disabled through his date last insured, December 31, 2016. (*Id.*)

### 3. Standard of Review

The court's role in reviewing an ALJ's decision is limited. It must "uphold an ALJ's final decision if the correct legal standards were applied and supported with substantial

evidence." *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019) (citing 42 U.S.C. § 405(g)); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017) (quoting *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010)). "The court is not to 'reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner.'" *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (quoting *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). "Where substantial evidence supports the ALJ's disability determination, [the court] must affirm the [ALJ's] decision even if 'reasonable minds could differ concerning whether [the claimant] is disabled.'" *L.D.R. by Wagner*, 920 F.3d at 1152 (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

**4. Analysis**

Pinchard argues the ALJ erred (1) by rejecting his 2017 MRI results and Dr. Jeremy Scarlett's opinion; and (2) by discounting the psychological opinions of Drs. Pape, Harris, and Kores. (ECF No. 17 at 16-23.)

**4.1. 2017 MRI and Dr. Scarlett's Opinion**

In July 2017 Dr. Jeremy Scarlett, Pinchard's treating physician, filled out a form entitled, "Medical Assessment of Ability to Do Work-Related Activities (Physical)." (Tr. 1061-64.) He opined that during an eight-hour workday Pinchard would be able to stand/walk for one hour and could stand/walk without interruption for 10-15 minutes.

5

(Tr. 1061.) He stated that an MRI from January 10, 2017 (although January 13, 2017, appears to have been the actual date of the MRI (Tr. 907)) supported these opinions and "showed severe spinal stenosis at L3-4." (*Id.*) He made additional findings about Pinchard's ability to sit, and stated that an MRI from January 13, 2017, supported these opinions. (Tr. 1062.) Although he had only treated Pinchard for six months, Dr. Scarlett opined that Pinchard's conditions had existed for over two years. (Tr. 1064.)

"For claims filed before March 2017, a treating physician's opinion on the nature and severity of a medical condition is entitled to controlling weight if it is well-supported by medical findings and consistent with substantial evidence in the record." *Johnson v. Berryhill*, 754 F. App'x 247, 250 (7th Cir. 2018) (unpublished) (citing 20 C.F.R. § 404.1527(c)(2); *Brown v. Colvin*, 845 F.3d 247, 252 (7th Cir. 2016)). "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and the extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" to determine how much weight to give the opinion. *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009) (citing 20 C.F.R. § 404.1527(c)(2)). While "[a]n ALJ must offer good reasons for discounting a treating physician's opinion," *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations and citation omitted), courts will uphold "all but the most patently erroneous reasons for discounting

a treating physician's assessment." *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (citing *Luster v. Astrue*, F. App'x 738, 740 (7th Cir. 2010) (unpublished)).

The ALJ gave Dr. Scarlett's opinion "little weight," explaining:

> The limitations placed on [Pinchard] by Dr. Scarlett are consistent with a reduced range of sedentary work. However, Dr. Scarlet [sic] rendered his opinion in 2017 subsequent to [Pinchard's] date last insured. Likewise, he bases his opinion, in part, on an MRI taken after the date last insured. There is no evidence suggesting the pathology seen on this MRI existed during the time period at issue. More importantly, as discussed above, [Pinchard's] rather normal presentation on physical examination does not justify a limitation to sedentary work. As a result, the undersigned gives the opinion of Dr. Scarlett little weight.

(Tr. 21 (internal citations omitted).)

Pinchard argues that the ALJ improperly rejected his 2017 MRI results and Dr. Scarlett's opinion. (ECF No. 17 at 16-19.) Even though Pinchard acknowledges that in some cases medical evidence may be too remote from the date last insured to be relevant, he asserts that is not the case here and that "[t]he ALJ has no support for his assessment that Mr. Pinchard's spine dramatically deteriorated in the *14 days* between Mr. Pinchard's date last insured [December 31, 2016] and the 2017 MRI." (*Id.* at 17.) He also argues that the ALJ noted that Pinchard suffered from back and joint pain prior to 2017 that was worsened by his obesity. (*Id.*)

In response the Commissioner argues that substantial evidence supports the ALJ's conclusion. (ECF No. 22 at 14-18.) The Commissioner points to the fact that the 2017 MRI revealed narrowing of the right L3-L4 foramen "with contact of the margins of the exiting

7

right L3 nerve." (*Id.* at 17.) Neither an MRI from 2013 nor an x-ray from 2016 revealed such nerve contact, "supporting the ALJ's conclusion that '[t]here is no evidence suggesting the pathology seen on this MRI existed during the time period at issue.'" (*Id.*)

"[A] claimant must show that the disability arose while he or she was insured for benefits." *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009). However, "the ALJ must consider evidence that post-dates the relevant period to the extent that it corroborates or supports the evidence from the relevant period." *Blom v. Barnhart*, 363 F. Supp. 2d 1041, 1059 (E.D. Wis. 2005); *see also Samuel v. Berryhill*, No. 17 C 4596, 2018 WL 1706370, at *7 (N.D. Ill. Apr. 9, 2018) (quoting *Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010)) ("ALJs are required to consider '*all* relevant evidence' in the administrative record, including evidence that postdates the date last insured.") (emphasis in original); *Halvorsen v. Heckler*, 743 F.2d 1221, 1225 (7th Cir. 1984) ("There can be no doubt that medical evidence from a time subsequent to a certain period is relevant to a determination of a claimant's condition during that period.") (citing *Stark v. Weinberger*, 497 F.2d 1092, 1098 (7th Cir. 1974)).

Although the ALJ stated that "[t]here is no evidence suggesting the pathology seen on this MRI [from 2017] existed during the time period at issue," (Tr. 21), there *is* such evidence, including Dr. Scarlett's opinion that Pinchard's condition had existed for more than two years. Even the ALJ in his decision pointed to other evidence that corroborated the MRI findings and Pinchard's back pain. Moreover, it is important to emphasize that

the gap between the date last insured and the MRI is a mere two weeks. There is no evidence of any intervening injury or trauma. To the contrary, Pinchard had long complained of back pain. In short, the ALJ did not provide good reasons for discounting Dr. Scarlett's opinion.

On remand, the ALJ shall reevaluate Dr. Scarlett's opinion in light of the relevant evidence in the record. If the ALJ decides that his opinion is not entitled to controlling weight, he shall give "good reasons" supported by the record for discounting it.

**4.2. Psychological Opinions**

Pinchard argues that the ALJ erred by discounting the opinions of State agency psychological consultants Deborah Pape, Ph.D., and Theresa Harris, Ph.D., and consultative examiner Peter John Kores, Ed.D. (ECF No. 17 at 19-23.) All three gave opinions as to Pinchard's mental work-related limitations. Despite the limitations, Pape and Harris both opined that Pinchard would be capable of unskilled work. (Tr. 74, 91.) Kores opined that Pinchard would be moderately limited in concentration and attention, work pace, stressors, and adjusting to changes because of his medical issues. (Tr. 673.)

The ALJ gave "little weight" to the opinions of Pape, Harris, and Kores, explaining:

> As with the medical consultants, the psychological consultants' opinions do deserve some weight as these doctors have a high level of understanding of the Social Security disability program and enjoy a review of all the available evidence in the record when forming their opinions. Dr. Pape and Dr. Harris evaluated [Pinchard's] mental impairment and assigned some mental work related limitations. Likewise, the undersigned also considered the opinion of Peter John Kores, Ed.D., [Pinchard's] psychological consultative examiner, who also placed work related limitations on

> [Pinchard] from a mental health standpoint. However, evidence received at the hearing level does not suggest [Pinchard] would have experienced any mental, work-related limitations. While [Pinchard] attended counseling, he was seen primarily for marital issues. [Pinchard] struggled at times with behavioral/emotional problems, but these were generally in the context of his relationship with his wife and his family. Moreover, at the hearing, [Pinchard] testified that the primary reason he stopped working was his physical impairments. He additionally stated that he stopped working in 2010 and resumed working in 2011 for his own emotional well-being. He conveyed the notion of needing to work for emotional reasons more than once at the hearing. Further mental status examination at his consultative examination demonstrated adequate orientation, intact recall, and a normal ability to calculate simple math problems quickly. Lastly, [Pinchard's] regular activities listed in his function report suggest he is not as limited mentally as opined. His function report largely addresses his physical impairment with few statements regarding mental limitations. For example, he listed solely physical impediments to performing personal care outside of a reminder "now and then" to take his medication. Moreover, he reports cooking (including full meals), doing indoor chores, performing outside chores, driving, shopping (in person and by computer), and handling money. As such, the undersigned gives little weight to the opinions of Dr. Pape, Dr. Harris, and Dr. Kores.

(Tr. 21-22 (internal citations omitted).)

Pinchard was diagnosed with borderline personality disorder. He stated that he is often judgmental with people, can be immature in handling conflicts, and will at times "react[] with anger, irritability, argumentativeness, and 'nasty comments.'" (Tr. 681.) The consulting and examining experts all agreed that his mental health problems would impair his ability to work. The ALJ, however, disagreed, noting that Pinchard could perform household chores and the mental health treatment he received was generally related to family matters.

The ALJ was not equating Pinchard's ability to do household chores with an ability to perform fulltime work. Rather, he was relying on the fact that Pinchard was able to perform household chores to conclude that his symptoms were not as severe as he alleged. It was an appropriate factor but insufficient, standing alone, to sustain the ALJ's conclusion.

As for the fact that the mental health care that Pinchard received was generally related to family problems, the ALJ failed to adequately explain why this fact merited discounting the medical experts' conclusions. It is true that often the problems that lead a person into family counseling will be wholly unrelated to work and thus have no impact on a person's ability to engage in substantial gainful activity. However, the ALJ offered no reason to conclude that such a division existed here. Rather, the evidence indicates that Pinchard's family problems were the result, at least in part, of his borderline personality disorder. The ALJ failed to offer good reasons to believe that Pinchard's borderline personality disorder, and the resultant problems in interpersonal relationships, would not impair his ability to work, as the three psychological experts concluded. Therefore, on remand the ALJ will also have to reassess the weight he afforded the opinions of Pape, Harris, and Kores.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **reversed**, and pursuant to 42 U.S.C. § 405(g), sentence four, this matter is **remanded** for further rulings consistent with this decision. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 11th day of August, 2020.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge